UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARSHAWN LYNDELL LORE HORNE, | ) ) | Case No. 5:12CV2274 |
| | ) | |
| Petitioner, | ) ) | JUDGE DAN AARON POLSTER |
| v. | ) ) | Magistrate Judge George J. Limbert |
| JASON BUNTING, WARDEN[1], | ) ) | **Report and Recommendation of Magistrate Judge** |
| Respondent. | ) ) ) | |

On August 17, 2012[2], Petitioner Marshawn Lyndell Lore Horne("Petitioner"), acting *pro se*,

filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  ECF Dkt. #1.  Petitioner

seeks relief for alleged constitutional violations that occurred in the Summit County, Ohio Court of

Common Pleas, during Petitioner's jury trial and conviction for one count of aggravated robbery in

violation of Ohio Revised Code ("R.C.") § 2911.01(A)(1), a felony of the first degree, as well as a

gun specification in violation of R.C. § 2941.145; one count of having weapons while under

disability in violation of R.C. § 2923.13(A)(2), a felony of the third degree; and one count of grand

theft in violation of R.C. § 2913.02(A)(1) and (4), a felony of the fourth degree.[3]  With leave of

Court, on March 20, 2013, then Respondent Barry Goodrich, Warden of Lake Erie Correctional

---

[1]Petitioner is housed at Marion Correctional Institution, where Jason Bunting is the warden.  See www.drc.ohio.gov "[T]he default rule is that the proper respondent is the warden of the facility where the prisoner is being held . . ." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). Accordingly, the Petition should be amended to name Jason Bunting as Respondent.

[2]The filing date for a petition from an incarcerated *pro se* petitioner is the date the petition was handed over to the prison mail system, not the date it was received and docketed by the federal habeas court. *Houston v. Lack*, 487 U.S. 266, 270-72, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988).

[3]The Ninth District Court of Appeals reversed Petitioner's conviction for fourth degree grand theft, and remanded the case for an entry of judgment that accurately reflected the guilty verdict – that is, a finding that Petitioner committed grand theft of the least degree, a misdemeanor of the first degree.  See *State v. Horne*, 2011 WL 1486628 (Ohio App. 9th Dist.).

Institution filed the answer/return of writ. ECF Dkt. #8.  With leave of Court, a traverse was filed on June 28, 2013.  ECF Dkt. #12.  A sur-reply was filed on July 3, 2013. ECF Dkt. #13.

For the following reasons, the undersigned recommends that the Court DISMISS the instant petition in its entirety with prejudice:

# I.    **SYNOPSIS OF THE FACTS**

The Ninth District Court of Appeals of Ohio set forth the relevant facts on direct appeal. *State v. Horne*, 2011 WL 1486628 (9th Dist.). These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 2403 (1999):

> {¶ 49} Officer Robert Patrick of the Akron Police Department ("APD") testified that he was on patrol on June 7, 2008, when he was dispatched at approximately 11:30 p.m., to Black Street in Akron, on a robbery call. The officer testified that he was subsequently redirected to the Euro Gyro restaurant on Exchange Street because the robbery victim had gone there. Officer Patrick testified that the victim reported that he was attempting to deliver food to 450 Black Street when two black males approached him and told him the food order was incorrect. The officer testified that the victim reported that one of the men brandished a gun and took the victim's car. Officer Patrick testified that other officers were dispatched to 450 Black Street, which appeared to be an unoccupied residence, to look for suspects but none were found.

> {¶ 50} Douglas Sutton testified that he was attempting to deliver a food order from Euro Gyro to 450 Black Street at 11:30 p.m. on June 7, 2008, when a man standing in front of that house informed him that the order was wrong. Mr. Sutton continued to testify as follows. Another man approached and offered to pay for the food, but Mr. Sutton offered to give it to the two men for free. As Mr. Sutton turned to return to his car (a 2005 Dodge Stratus), one of the men pulled out a gun and told Mr. Sutton to "lay it down ." Both men jumped in Mr. Sutton's car and drove away, the man with the gun driving. Mr. Sutton ran away and called 911.

> {¶ 51} Mr. Sutton testified that he informed Detective Morrison that he would recognize the man who pulled a gun on him and took his car because he spent 3-5 minutes with him at the scene. When Detective Morrison showed Mr. Sutton a photo array of suspects, the victim identified Horne as the perpetrator immediately.

> {¶ 52} Detective Don Frost of the APD crime scene unit testified that on June 11, 2008, he processed a stolen vehicle which had recently been recovered. He testified the vehicle was a Dodge Stratus that contained a piece of mail from the bureau of motor vehicles which was addressed to Mr. Sutton. Detective Frost testified that he dusted the vehicle for fingerprints but was not surprised that he did not find any useable prints because frequently touched surface areas, such as those inside and outside a car, rarely provide definitive, useable prints. The detective testified that the lack of a person's fingerprints inside a vehicle does not mean that the person had not

-2-

been there. Detective Frost testified that he found no hair samples in the car and that he did not swab the car for traces of DNA. He testified that it is standard practice not to swab for DNA in areas of common contact by multiple people because it is not possible to separate more than two DNA standards to determine a known donor.

{¶ 53} Detective Richard Morrison of the APD testified that this case was assigned to him after the victim's car was recovered. He testified that on June 9, 2008, he spoke with the victim who reported that he was robbed at gunpoint by two black males. The detective testified that the car was found on Clark Street in Akron, near the scene of the incident.

{¶ 54} Detective Morrison testified as follows as to how the police developed Horne as a suspect in this case. Rodney Kelly came to the police station on June 10, 2008, and stated that he had read in the newspaper about a stolen vehicle which had recently been recovered. Mr. Kelly reported that he saw someone driving the stolen vehicle the night before it was recovered. Mr. Kelly reported that he was with his daughter when she called out to someone by a nickname he recognized. Knowing that that person had been involved in a criminal incident one to two years earlier, and believing that that person was still in jail, Mr. Kelly looked and recognized the man he knew only by that nickname. Mr. Kelly reported that he did not believe that it was possible that that man owned the newer car he was driving. Detective Morrison was familiar with the prior criminal incident that Mr. Kelly referenced, so he contacted the detective who investigated the prior case. Detective Morrison reviewed the prior case file to identify the defendant in that case and put together a photo array containing that defendant's photograph. Horne was the defendant involved in the prior incident which Mr. Kelly referenced in his report. When Detective Morrison presented the photo array to Mr. Sutton, the victim identified Horne as the person who stole his car at gunpoint.

{¶ 55} Rodney Kelly testified as a hostile witness. In an effort to elicit testimony which would corroborate Detective Morrison's testimony, the State asked very factually specific questions. Nevertheless, Mr. Kelly denied reporting that his daughter called out to "Killer" which caught his attention because he knew an individual who went by the nickname "Killer" because of that individual's involvement in a prior robbery at Dave's Supermarket. Mr. Kelly testified that he did not recall telling the police that the person he saw driving was the same person about whom he had given information to police regarding a prior robbery. In fact, he testified that he did not know what the assistant prosecutor was talking about when she mentioned a 2006 robbery. Mr. Kelly denied telling the assistant prosecutor that he was afraid to testify. He testified that he was only in court because the assistant prosecutor had called his place of employment and threatened him, and that he was not in court pursuant to a subpoena. The transcript of docket and journal entries compiled by the clerk of courts indicates that on February 25, 2009, the assistant prosecutor issued a subpoena for Mr. Kelly's appearance at trial which was to begin on March 2, 2009.

{¶ 56} Detective Morrison again testified in rebuttal to Mr. Kelly's testimony. Detective Morrison reiterated that Mr. Kelly contacted him on June 10, 2008, and reported that he saw "Killer" in a blue Dodge that the newspaper had reported as stolen. The detective testified that Mr. Kelly reported that his daughter called out to "Killer" which caused him to look because he believed that "Killer" was still in jail because of his involvement in a robbery at Dave's Supermarket a year and a half earlier.

{¶ 57} Nicole Walker, an assistant prosecutor, testified that she was originally assigned to this case until the case was transferred to a different courtroom. Ms. Walker testified that she interviewed various witnesses, including Rodney Kelly, for trial preparation. She testified that Mr. Kelly told her that he recognized "Killer" when his daughter called out to someone. She testified that Mr. Kelly told her that he saw "Killer" in a car, later read a newspaper article about a stolen car, "and put two and two together and contacted the police."

{¶ 58} Detective John Bell of the APD testified that he was familiar with Horne because of Horne's involvement in a 2006 aggravated robbery at Dave's Supermarket, located approximately one-half mile from Horne's home. The detective described the area and testified that Horne's home is half-way between Dave's Supermarket and 450 Black Street. He testified that Horne was developed as a suspect in the 2006 aggravated robbery when Rodney Kelly came forward and reported to the police that "Killer" was "possibly involved" in the incident. Detective Bell testified that, during a canvas of the area of the incident, a teenager on the street informed police that "Killer" was Horne's nickname. He testified that police records regarding the 2006 incident reference the nickname "Killer" in regard to Horne. The detective testified that Horne was arrested and ultimately adjudicated delinquent by reason of aggravated robbery for the 2006 incident. Detective Bell identified a certified copy of a journal entry evidencing Horne's delinquency adjudication and commitment to the Ohio Department of Youth Services for the charges of aggravated robbery and kidnapping. The detective confirmed that a delinquency adjudication and disposition constitutes a "conviction."

{¶ 59} Sergeant Ken Butler of the APD testified that he is a certified forensic polygraph examiner. He testified that Horne consented in writing to the administration of a polygraph examination. He also testified that both the State and Horne stipulated to the admissibility of the results of the examination. Sergeant Butler testified that he and Horne developed three relevant questions for the examination, specifically: (1) "Did you rob the Euro Gyro delivery man?" (2) "Did you pull a gun on the Euro Gyro delivery man?" (3) "Did you steal the Euro Gyro delivery man's car?" The sergeant testified that Horne responded "no" to each question. He testified that his findings were that there was "deception indicated."

{¶ 60} Sergeant Butler testified that, before he administers a polygraph examination, he conducts various interviews and evaluations to ensure that the examinee has no physical ailments or psychological conditions that would render the examinee unsuitable for a polygraph examination. He testified that he is not aware of any studies which indicate that teenagers are not suitable candidates for polygraph examinations. Sergeant Butler testified, in fact, that the only factors which would limit the reliability of the results are examining an unsuitable examinee or allowing the administration of the examination by an inexperienced polygraph operator. He testified that an examinee's mere illness would not affect results. Sergeant Butler testified that, in any event, Horne did not indicate to him that he had been ill prior to the examination.

. . .

{¶ 63} The State presented the testimony of the victim who identified Horne in a photo array as the person who pointed a gun at him and drove away in his car. Mr. Sutton testified that the gun was either a Highpoint 380 or Highpoint 9 mm, weapons with which he was familiar because he owned a Highpoint firearm. Detective Morrison testified that he developed Horne as a suspect, despite the absence of DNA or fingerprint evidence, based on a citizen's report to police that someone he knew

-4-

only as "Killer" had been driving a car which matched the description of a stolen car which the police had recovered. Detective Morrison testified that he was able to identify Horne as "Killer" because the citizen, Rodney Kelly, reported that he knew "Killer" from his involvement in a prior aggravated robbery in 2006. Detective Bell testified that Mr. Kelly reported "Killer's" involvement in the 2006 incident and that he was able to identify Horne as "Killer" based on information received from a teenager in the area who knew Horne. Detective Bell further identified the certified copy of Horne's juvenile adjudication and disposition for the 2006 offenses.

{¶ 64} Horne presented the testimony of four witnesses, including Horne who testified in his own defense.

{¶ 65} Raven Horne, Horne's 15-year old sister, testified that Horne was at home all evening on June 7, 2008. She testified that Horne was in bed asleep at 11:00 p.m. and that he asked to use the phone she was using some time between 11:00 p.m. and midnight. Raven testified that Horne used the phone for a minute then returned to bed.

{¶ 66} Deandra Jackson testified that she was dating Horne on June 7, 2008. She testified as to her phone number at that time.

{¶ 67} Racshel Horne, Horne's mother, testified that Horne returned home around 6 p.m. on Saturday, June 7, 2008, after playing basketball. She testified that Horne was wearing the shorts in which he sleeps around 9:20 p.m. She testified that around 11:00 p.m. she saw her son asleep in his bed while her daughter spoke to someone on the phone. Racshel testified that her phone bill reflects a call that Horne made at approximately one minute after midnight.

{¶ 68} Racshel testified that she took Horne to work around 9:00 a.m. on June 8, 2008. She testified that Horne does not have a driver's license and does not know how to drive.

{¶ 69} Horne testified in his own defense. He testified that he turned 18 years old on March 1, 2009. He admitted that he was involved in the offenses that took place at Dave's Supermarket in December 2006, but he denied that he possessed a gun during the commission of those offenses.

{¶ 70} Horne testified that he played basketball most of the day on June 7, 2008. He testified that he returned home around 8:00 p.m., changed his clothes, brought some food up to his room, brought his dishes down to the kitchen, returned to his bedroom, and went to sleep around 11:00 p.m. Horne testified that he later got up to use the bathroom and call his girlfriend around midnight. He testified that he returned to bed when his girlfriend did not answer his call. Horne testified that his mother drove him to work the next morning. He testified that he does not know how to drive and that he never drove a blue 2005 Dodge Stratus.

{¶ 71} Horne testified that he agreed to submit to a polygraph examination, although he was taking anti-anxiety medication at the time of the administration of the examination. He admitted that he did not inform Sergeant Butler that he was on medication at the time of the polygraph examination; rather, he only told him that he had experienced some foot pain in the past couple years. Horne concluded his testimony by denying any role in the 11:30 p.m. aggravated robbery on June 7, 2008, at 450 Black Street.

A.  **State Trial Court**

On June 23, 2008, a complaint was filed in the Summit County Juvenile Court, alleging that Petitioner was a delinquent child by reason of aggravated robbery in violation of R.C. 2911.01(A), a felony of the first degree if committed by an adult. After a hearing, the juvenile court found that probable cause existed to show that Petitioner brandished a firearm during the course of an aggravated robbery. The juvenile court then transferred the case to the Summit County Court of Common Pleas, General Division, pursuant to R.C. 2152.10, for further proceedings.

On September 8, 2008, the Summit County Grand Jury indicted Petitioner on one count of aggravated robbery in violation of R.C. 2911.01(A)(1), a felony of the first degree, as well as a gun specification in violation of R.C. 2941.145; one count of having weapons while under disability in violation of R.C. 2923.13(A)(2), a felony of the third degree; and one count of grand theft in violation of R.C. 2913.02(A)(1)/(4), a felony of the fourth degree. ECF Dkt .#8-1 at p. 1-2. Petitioner entered a plea of not guilty to the charges.  *Id.* at p. 3.

On October 30, 2008, Horne filed a notice of alibi, asserting that he was at home during the commission of the alleged offenses.  *Id.* at pp. 4-5.  On November 10, 2008, the State filed its notice of intent to use other acts evidence pursuant to Evid.R. 404(B) and R.C. 2945.59. *Id.* at pp. 6-9. The State moved for an order allowing it to present evidence of Petitioner's prior convictions for aggravated robbery with a handgun and kidnapping. Prior to trial, the trial court issued a preliminary ruling, indicating that evidence of Petitioner's prior conviction would be admissible. Defense counsel then made a motion in limine to exclude evidence of Petitioner's "street name" or nickname "Killer." After hearing the arguments of counsel, the trial court issued a preliminary ruling that the State could not introduce evidence of Petitioner's street name.

The matter proceeded to trial. During opening statements, Petitioner objected to the State's characterization that Petitioner "failed [a stipulated] polygraph examination." Petitioner moved for a mistrial which the trial court denied. At the conclusion of trial, the jury found Petitioner guilty of all three charges as well as the gun specification. Petitioner was sentenced to an aggregate term of nine years in prison.  *Id.* at pp. 10-17.

## B.  **Direct Appeal**

Petitioner, through new counsel, filed an appeal of his conviction to the Ninth District Court of Appeals, Summit County, Ohio. *Id.* at pp. 18-92. In his brief, Petitioner set forth the following assignments of error:

> 1. TRIAL COURT ERRED AND COMMITTED PLAIN ERROR BY ALLOWING THE PROSECUTOR TO INTRODUCE EVIDENCE ABOUT PRIOR, SEPARATE CRIMINAL CONDUCT IN VIOLATION OF OHIO STATUTORY LAW AND OHIO RULES OF EVIDENCE 403 AND 404.
>
> 2. TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR, BY ACCEPTING JOURNAL ENTRIES OF DEFENDANT'S PRIOR CONVICTIONS AS EVIDENCE
>
> 3. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING DEFENDANT'S MOTION FOR MISTRIAL.
>
> 4. TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR, WHEN IT PERMITTED INTO EVIDENCE TESTIMONY REGARDING THE RESULTS OF DEFENDANT'S POLYGRAPH EXAM.
>
> 5. TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT REVERSED ITS PRIOR RULING AND PERMITTED THE PROSECUTOR TO REFER TO DEFENDANT AS "KILLER".
>
> 6. TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT FAILED TO PROPERLY INSTRUCT THE JURY ABOUT THE ESSENTIAL ELEMENTS OF THE OFFENSE OF AGGRAVATED ROBBERY.
>
> 7. DEFENDANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

*Id.* The State filed a motion to dismiss the appeal and vacate the sentence. *Id.* at pp. 93-94. The State noted that post-release control was not mentioned at the sentencing hearing but was correctly set forth in the sentencing entry. *Id.* The Court of Appeals denied the motion, but stated that "this matter may be revisited upon the review of the record during the final disposition of the appeal." *Id.* at p. 95.  The State filed the appellee brief on September 4, 2009.  *Id.* at pp. 96-130.  On December 2, 2009, the Court of Appeals vacated the judgment and remanded this case for a new sentencing hearing. *Id.* at pp. 131-135. Pursuant to the remand order, the trial court held a resentencing hearing on January 8, 2010, and Petitioner was resentenced to serve an aggregate sentence of nine years. *Id.* at pp. 136-137.

Petitioner, through counsel, filed an appeal of his conviction following his January 8, 2010 re-sentencing to the Ninth District Court of Appeals. *Id.* at pp. 138-182. Petitioner set forth the following assignments of error:

> 1. TRIAL COURT ERRED AND COMMITTED PLAIN ERROR BY ALLOWING THE PROSECUTOR TO INTRODUCE EVIDENCE ABOUT PRIOR, SEPARATE CRIMINAL CONDUCT IN VIOLATION OF OHIO RULES OF EVIDENCE 403 AND 404.
>
> 2. TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR, BY ACCEPTING JOURNAL ENTRIES OF DEFENDANT'S PRIOR CONVICTIONS AS EVIDENCE.
>
> 3. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING DEFENDANT'S MOTION FOR MISTRIAL.
>
> 4. TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR, WHEN IT PERMITTED INTO EVIDENCE TESTIMONY REGARDING THE RESULTS OF DEFENDANT'S POLYGRAPH EXAM.
>
> 5. TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT REVERSED ITS PRIOR RULING AND PERMITTED THE PROSECUTOR TO REFER TO DEFENDANT AS "KILLER".
>
> 6. DEFENDANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
>
> 7. DEFENDANT'S CONVICTION FOR GRAND THEFT, A FELONY OF THE FOURTH DEGREE, VIOLATED RC §2945.75(A)(2) AND STATE V. PELFREY, 112 OHIO ST.3D 422, 860 N.E.2D 735, 2007-OHIO-256, BECAUSE THE JURY VERDICT DID NOT INCLUDE THE DEGREE OF THE OFFENSE, NOR ANY AGGRAVATING ELEMENTS.

*Id.* The State filed its brief on April 29, 2010.  *Id.* at pp. 182-210.  On April 20, 2011, the Court of Appeals affirmed Petitioner's convictions on the first two counts, but amended Petitioner's conviction and sentence on the grand theft count. The Ninth District issued a special mandate, directing the Summit County Court of Common Pleas to carry the judgment into execution. The Ninth District further ordered that a certified copy of the journal entry shall constitute the mandate, pursuant to App.R. 27.  With respect to the third count, the Ninth District reasoned:

> {¶ 74} Horne argues that the trial court erred in sentencing him to a felony of the fourth degree for the offense of grand theft. The State concedes error. This Court agrees.
>
> {¶ 75} Horne did not raise this objection before the trial court. We previously stated, however, that

-8-

"[w]hile Defendant failed to object below to this particular error, this type of error actually prejudices the State, not Defendant, and thus Defendant need not object below to preserve the issue on appeal." State v. Goodwin, 9th Dist. No. 23787, 2008–Ohio–783, at ¶ 21, quoting State v. Davis, 9th Dist. No. 21794, 2004–Ohio3246, at ¶ 59, citing State v. Gleason (1996), 110 Ohio App.3d 240, 248.

{¶ 76} Horne was indicted on one count of grand theft in violation of R.C. 2913.02(A)(1)/(4), a felony of the fourth degree. R.C. 2913.02(B) differentiates the level of the offense based on certain underlying circumstances, for example:

"(1) Whoever violates this section is guilty of theft.

"(2) Except as otherwise provided in this division or division (B)(3), (4), (5), (6), (7), or (8) of this section, a violation of this section is petty theft, a misdemeanor of the first degree. If the value of the property or services stolen is five hundred dollars or more and is less than five thousand dollars or if the property stolen is any of the property listed in section 2913.71 of the Revised Code, a violation of this section is theft, a felony of the fifth degree. If the value of the property or services stolen is five thousand dollars or more and is less than one hundred thousand dollars, a violation of this section is grand theft, a felony of the fourth degree. If the value of the property or services stolen is one hundred thousand dollars or more and is less than five hundred thousand dollars, a violation of this section is aggravated theft, a felony of the third degree. If the value of the property or services stolen is five hundred thousand dollars or more and is less than one million dollars, a violation of this section is aggravated theft, a felony of the second degree. If the value of the property or services stolen is one million dollars or more, a violation of this section is aggravated theft of one million dollars or more, a felony of the first degree.

" * * *

"(5) If the property stolen is a motor vehicle, a violation of this section is grand theft of a motor vehicle, a felony of the fourth degree."

R.C. 2945.75 addresses degrees of offenses and states, in relevant part:

"(A) When the presence of one or more additional elements makes an offense one of more serious degree:

"(1) The affidavit, complaint, indictment, or information either shall state the degree of the offense which the accused is alleged to have committed, or shall allege such additional element or elements. Otherwise, such affidavit, complaint, indictment, or information is effective to charge only the least degree of the offense.

(2) A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged."

{¶ 77} In this case, Horne's indictment charged the offense of grand theft as a felony of the fourth degree and further alleged that the property stolen was a motor vehicle. Accordingly, the indictment properly charged a felony of the fourth degree.

{¶ 78} The guilty verdict for the count alleging grand theft, however, neither states the degree of the offense, nor indicates that any additional element or elements are present to enhance the offense level of the charge. The verdict form does not indicate

that the property stolen was a motor vehicle or that the value of the property stolen was five thousand dollars or more and less than one hundred thousand dollars. The Ohio Supreme Court has held that "[p]ursuant to the clear language of R.C. 2945.75, a verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense." State v. Pelfrey, 112 Ohio St.3d 422, 2007-Ohio-256, at syllabus. Accordingly, pursuant to the plain language of R.C. 2945.75(A)(2), the guilty verdict constitutes a finding that Horne is guilty of the least degree of the offense charged, that being a misdemeanor of the first degree. See R.C. 2913.02(B)(2). Horne's seventh assignment of error is sustained.

On August 29, 2011, the trial court entered a nunc pro tunc order reflecting Petitioner's conviction and sentencing for Grand Theft, a misdemeanor of the first degree. ECF Dkt. #8-1 at p. 288-289. Petitioner's sentence was not affected by the nunc pro tunc order.

## C. Supreme Court of Ohio

To be timely under Ohio Supreme Court Rule of Practice 2.2(A)(1)(a), a notice of appeal must be filed within forty-five days of entry of the appellate judgment for which review is sought. The Supreme Court Rules require a motion for a delayed appeal to state the date of entry of the judgment being appealed and adequate reasons for the delay. Ohio Sup.Ct. R. II, Section 2(A)(4)(a). In addition, the motion must be accompanied by a supporting affidavit and a copy of the decision being appealed. Id. A motion for a delayed appeal is not required to contain the actual claims and supporting arguments sought to be presented on appeal. Id. Instead, only when the Supreme Court grants a motion for delayed appeal, is the appellant required to file a memorandum in support of jurisdiction. Ohio Sup.Ct. R. II, Section 2(A)(4) (c).

On October 14, 2011, Petitioner filed a notice of appeal and motion to file delayed appeal in the Ohio Supreme Court. ECF Dkt. #8-1 at p. 243-286. The notice of appeal also bears a received stamp dated September 19, 2011. In the motion, Petitioner concedes that more than forty-five days had elapsed since the Ninth District's decision was journalized, however, he argues that his appellate counsel was ineffective in failing to forward a date-stamped copy of the Ninth District's decision, which was required to perfect the Supreme Court appeal, as well as in failing to instruct Petitioner on the Supreme Court appeal process. On November 30, 2011, the Ohio Supreme Court denied Petitioner's motion for a delayed appeal. Id. at 287.

## III. 28 U.S.C. § 2254 PETITION

-10-

The instant *pro se* petition was filed August 17, 2012. Petitioner presents the following grounds for relief:

> **GROUND ONE: PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL BY VIRTUE OF COUNSEL'S FAILURE TO KEEP PETITIONER INFORMED OF IMPORTANT DEVELOPMENTS IN THE COURSE OF PROSECUTING THE APPEAL, RESULTING IN PETITIONER MISSING THE DEADLINE TO FILE APPEAL OF COURT OF APPEALS DECISION AFFIRMING HIS CONVICTION TO THE OHIO SUPREME COURT.**

> **GROUND TWO: THE TRIAL COURT ERRED BY ALLOWING THE PROSECUTION TO INTRODUCE EVIDENCE ABOUT PRIOR, SEPARATE CRIMINAL CONDUCT, AND BY FURTHER ERRED (SIC) BY ACCEPTING JOURNAL ENTRIES OF PETITIONER'S PRIOR CONVICTIONS AS EVIDENCE.**

> **GROUND THREE: THE TRIAL COURT ERRED BY ALLOWING THE PROSECUTION TO INTRODUCE EVIDENCE ABOUT PRIOR, SEPARATE CRIMINAL CONDUCT, AND BY FURTHER ERRED (SIC) BY ACCEPTING JOURNAL ENTRIES OF PETITIONER'S PRIOR CONVICTIONS AS EVIDENCE.[4]**

> **GROUND FOUR: THE TRIAL COURT ERRED BY WHEN IT REVERSED ITS PRIOR RULING AND PERMITTED THE PROSECUTOR TO REFER TO PETITIONER AS "KILLER."**

> **GROUND FIVE: PETITIONER'S CONVICTION IS NOT SUPPORTED BY SUFFICIENT EVIDENCE.**

ECF Dkt. #1.

## IV.    PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993). However, the Supreme Court has also held that it would be in the interests of the parties and the courts for the merits of a petition to be addressed forthwith if it is clear that the applicant does not

---

[4]Although it appears that Grounds Two and Three state the same grounds for relief, Petitioner, in the body of his Traverse, challenges the prosecutor's opening statement and the introduction of testimony regarding the polygraph results.

even raise a colorable federal claim. *Granberry v. Greer*, 481 U.S. 129, 135 (1987); *Prather v. Rees*, 822 F.2d 1418, 1421-22 (6th Cir. 1987) (lack of exhaustion was properly excused where petition was plainly meritless, the state had not addressed exhaustion, and disposition of the case would not offend federal-state comity).

### A.    Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final.  28 U.S.C. §2244(d)(1).  The AEDPA statute of limitations is not at issue in this case.

### B.    Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court."  *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated.  *McMeans*, 228 F.3d at 681 citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims.  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*,

-12-

375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993) cert. denied, 509 U.S. 907 (1993)(quotation omitted).  In *Harris v. Lafler*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id.* at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, *id.* at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031-32  (6th Cir. 2009).  The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist." *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963).  A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted.  *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C.    Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  In these cases, "the state judgment rests on independent and adequate state procedural grounds."  *Coleman* at 730.  For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004), citing *Ylst v.Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).  In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon

-13-

the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary.  *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted.  *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986).  Under the *Maupin* test, a reviewing court must decide:

(1)     whether the petitioner failed to comply with an applicable state procedural rule;

(2)     whether the state courts actually enforced the state procedural sanction;

(3)     whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and

(4)     if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule.  *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve  to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006).  The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as

-14-

substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986).

> Simply stated, a federal court may review federal claims that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (*i.e.*, exhausted) or because they were not properly presented to the state courts (*i.e.*, were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel*, 301 F.Supp.2d 698, 722 (N.D. Ohio 2004). A petitioner who is unable to show cause and prejudice may obtain habeas review only if denying such review would produce a fundamental miscarriage of justice, such as when new evidence suggests actual innocence. *Dretke v. Haley*, 541 U.S. 386, 393, 124 S.Ct. 1847, 158 L.Ed.2d 659 (2004).

**V.     STANDARD OF REVIEW**

The undersigned further recommends that the Court find that the AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 on August 17, 2012, well after the act's effective date of April 26, 1996. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998). Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).

-15-

The AEDPA sets forth the standard of review for the merits of a petition for a writ of habeas corpus.  The AEDPA provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)  resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Further, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."  *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."  *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

> A.  Decisions of lower federal courts may not be considered.
>
> B.  Only the holdings of the Supreme Court, rather than its dicta, may be considered.

-16-

C.    The state court decision may be overturned only if:

1.    It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

2.    the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

3.    'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

4.    the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D.    Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.    Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986). The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

(e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e). The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,*

509 U.S. 907 (1993).  The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).  Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

The United States Supreme Court has observed:

> Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 786-787 (2011).

## VI.    ANALYSIS

**GROUND ONE: PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL BY VIRTUE OF COUNSEL'S FAILURE TO KEEP PETITIONER INFORMED OF IMPORTANT DEVELOPMENTS IN THE COURSE OF PROSECUTING THE APPEAL, RESULTING IN PETITIONER MISSING THE DEADLINE TO FILE APPEAL OF COURT OF APPEALS DECISION AFFIRMING HIS CONVICTION TO THE OHIO SUPREME COURT.**

Petitioner's First Ground for Relief is not a separate ground for relief[5], but, instead, an effort to demonstrate cause and prejudice sufficient to excuse his failure to timely file an appeal to the Ohio Supreme Court.  In the return of writ, Respondent contends that all of the grounds advanced in the petition are procedurally barred by the Ohio Supreme Court decision denying Petitioner's motion to file a delayed appeal.  A federal habeas court is barred from considering issues that could have been raised in the state  courts, but were not, and which may not be presented to those state

---

[5]To the extent that Petitioner's first ground for relief can be interpreted as a separate ground for relief, it is important to note that Petitioner did not file a Ohio App. Rule 26(B) motion with the Ninth District or the Supreme Court of Ohio.  To the extent that Petitioner did not raise this issue in state court, and offers no cause and prejudice to excuse his failure to raise the issue in state court, the claim is procedurally barred.

courts due to procedural default or waiver. *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).

The Sixth Circuit has recognized that the Ohio Supreme Court's denial of a motion for leave to file a delayed appeal is a procedural ruling sufficient to bar habeas review. *Smith v. Ohio Dept. of Rehab. and Corr.*, 463 F.3d 426, 431-432 (6th Cir.2006) (appellant failed to comply with Ohio Supreme Court Rules by not filing appeal within period set forth by those rules); *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir.2004) (*per curiam*), cert. denied, 543 U.S. 989, 125 S.Ct. 506, 160 L.Ed.2d 375 (2004).

As the Sixth Circuit explained in *Bonilla*, "the applicable Ohio [Supreme Court] rules indicate that the denial of a motion for a delayed appeal is a procedural ruling, not a ruling on the merits." *Bonilla*, 370 F.3d at 497 (and unpublished Sixth Circuit cases cited therein). In this case, as in *Bonilla*, the Ohio Supreme Court was "entirely silent as to its reasons for denying [the] requested relief." See *id.* In such circumstances, it must be assumed that the state court enforced the applicable procedural bar to review. *Id.* (citing *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir.1996)).

When a petitioner has defaulted his federal claim in state court pursuant to an independent and adequate state procedural rule, habeas review is barred unless the petitioner can demonstrate cause for the default and actual prejudice, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Bonilla*, 370 F.3d at 497. "Cause" for a procedural default is ordinarily shown by "some objective factor external to the defense" which impeded the petitioner's efforts to comply with the state's procedural rule. *Coleman*, 501 U.S. at 753 (quoting *Murray*, 477 U.S. at 488).

Petitioner contends that his appellate counsel was ineffective due to her failure to provide a copy of the file-stamped Ninth District entry dismissing in part and grating in part his appeal, her failure to inform Petitioner that she did not intend to file a notice of appeal to the Ohio Supreme Court, and her failure to inform Petitioner of the Ohio Supreme Court requirements for appeal and the forty-five day deadline. See ECF Dkt. # 1-1 at p. 18.

There is no doubt that there is a constitutional right to effective assistance of counsel during a direct appeal as of right, see, e.g., *Smith v. Robbins*, 528 U.S. 259, 275-76, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); *Harbison v. Bell*, 408 F.3d 823, 829 (6th Cir.2005), and that appellate counsel's duties do not terminate the moment the court of appeals hands down its decision. "Because a defendant is entitled to effective assistance of counsel on direct appeal, such an individual must be accorded effective assistance of counsel throughout all phases of that stage of the criminal proceedings." *White v. Schotten*, 201 F.3d 743, 752-53 (6th Cir.2000) (citation omitted), overruled on other grounds by *Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir.2005). The court's ultimate decision regarding a particular legal proceeding is part of that legal proceeding, and appointed counsel's duties in representing a client during that legal proceeding include the duty of informing her client of the outcome of the proceeding. See *Paris v. Turner*, No. 97-4129, 1999 WL 357815, at *2-*3 (6th Cir. May 26, 1999) (unpublished opinion) (holding in part that due to counsel's delay in informing defendant of the decision on his first appeal of right and counsel's "fail[ure] to communicate to his client how to proceed with further appeals," it cannot "fairly be said that [the defendant] truly had his first appeal of right"), *cert.* denied, 529 U.S. 1104, 120 S.Ct. 1846, 146 L.Ed.2d 788 (2000).

The Constitution requires "that counsel make objectively reasonable choices," and must do so not only during the legal proceeding for which the counsel represents the client, but also after the judicial proceeding has concluded in determining whether an appeal should be filed. *Roe v. Flores-Ortega*, 528 U.S. 470, 479, 120 S.Ct. 1029 (2000). The Supreme Court has applied this standard to hold that trial counsel has a constitutional duty to consult with clients about filing an appeal after the trial proceedings have concluded "when there is reason to think either (1) that a rational defendant would want to appeal. . ., or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480.

Ineffective-assistance-of-counsel claims typically allege specific errors that counsel made in the course of a legal proceeding. *Flores-Ortega*, 528 U.S. at 482, 120 S.Ct. 1029. A defendant can also raise an ineffective assistance claim when "during the judicial proceeding [the defendant] was – either actually or constructively – denied the assistance of counsel altogether." *Id.* at 483, 120 S.Ct. 1029. Because it is presumed that the assistance of counsel is necessary for a reliable adversary

-20-

process, if the defendant is denied counsel on appeal, the appeal is deemed unfair without requiring any particular demonstration of prejudice. *Id*. at 483-84, 120 S.Ct. 1029. When, as here, a petitioner alleges that his counsel's ineffective assistance led to the forfeiture of a proceeding itself by denying him the opportunity to appeal and thus to the appeal proceeding itself, prejudice is presumed. *Id.* at 483, 120 S.Ct. 1029.

For this presumption to apply, however, the petitioner must demonstrate that counsel's deficient performance "actually cause[d] the forfeiture of the defendant's appeal." *Id.* at 484, 120 S.Ct. 1029. In *Flores-Ortega*, the Supreme Court held that a petitioner claiming that his counsel's failure to consult with him regarding taking an appeal was entitled to the presumption of prejudice if he could "demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.*

In determining whether the deficient performance of Petitioner's counsel caused the forfeiture of his appeal, the Sixth Circuit in *Smith* applies a modified version of the standard set forth in *Flores-Ortega*: "that there is a reasonable probability that, but for counsel's deficient failure to" notify Smith of the Ohio Court of Appeals decision, Smith "would have timely appealed" to the Ohio Supreme Court. *Id.* "Evidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination ." *Id.* at 485, 120 S.Ct. 1029.

In assessing whether Petitioner would have timely appealed, by considering whether he promptly expressed a desire to appeal, the *Smith* Court applies a rebuttable presumption that if the period of time between when the petitioner learned of the decision and when he or she attempted to appeal the decision is greater than the period allotted by state law for the timely filing of an appeal – here, forty-five days – the petitioner fails to demonstrate that he or she "would have timely appealed" the decision but for the counsel's deficient failure to notify the defendant of the decision. In the absence of other circumstances hindering the petitioner's ability to attempt to appeal the decision within this time frame, allowing a greater amount of time would generally bestow a windfall upon the petitioner whose counsel promptly failed to notify the defendant of a decision.

-21-

Even accepting Petitioner's assertion that he did not receive notice of the decision of the Ninth District's decision until June 30, 2011, he did not take action to appeal the decision until October 14, 2011, approximately one-hundred-and-five days after learning of the decision, well beyond the forty-five day limit allowed under Ohio Supreme Court Rule II § 2(A)(1)(a). Even applying the earlier date stamp, that is, September of 2011, the motion for delayed appeal is untimely. For this reason, Petitioner has failed to establish prejudice as a result of his counsel's failure to notify him of the Ohio Court of Appeals decision denying his claims, and thus he cannot rely on his counsel's ineffective assistance to overcome the procedural default of the claims in his petition.

Finally, Petitioner also cannot overcome the procedural default on his claims on the basis of a fundamental miscarriage of justice because he has not presented any evidence that he was "actually innocent." *Dretke* at 393. Accordingly, the undersigned recommends that the Court find that all of the grounds asserted in the petition are procedurally barred. However, even assuming *arguendo* that the remaining grounds in the petition have not been defaulted due to Petitioner's failure to timely file an appeal with the Ohio Supreme Court, the undersigned recommends that the Court find that they are either non-cognizable on habeas review, procedurally barred for other reasons, or they do not have merit.

> **GROUND TWO: THE TRIAL COURT ERRED BY ALLOWING THE PROSECUTION TO INTRODUCE EVIDENCE ABOUT PRIOR, SEPARATE CRIMINAL CONDUCT, AND BY FURTHER ERRED (SIC) BY ACCEPTING JOURNAL ENTRIES OF PETITIONER'S PRIOR CONVICTIONS AS EVIDENCE.**

> **GROUND THREE: THE TRIAL COURT ERRED BY ALLOWING THE PROSECUTION TO INTRODUCE EVIDENCE ABOUT PRIOR, SEPARATE CRIMINAL CONDUCT, AND BY FURTHER ERRED (SIC) BY ACCEPTING JOURNAL ENTRIES OF PETITIONER'S PRIOR CONVICTIONS AS EVIDENCE.**

First, it is important to note that Grounds Two and Three both appear to challenge the admission of prior bad acts evidence at trial. In fact, in the body of the Ground Three argument, Petitioner challenges statements made by the prosecutor in the opening statement regarding the polygraph results, as well as the testimony of Sergeant Ken Butler, the Akron Police Department officer who administered the polygraph test.

Despite the fact that Ground Three is not predicated upon the same evidence as Ground Two, Grounds Two and Three share common procedural defects. Petitioner did not present these grounds for relief as federal constitutional violations, rather, he presented the assignments of error to the state court as violations of state law under Rule 403 and 404 of the Ohio Rules of Evidence. As a consequence, the Ninth District addressed these claims as state law claims. The undersigned recommends that the Court find that these grounds are noncognizable on habeas review since it is not the province of a federal habeas court to reexamine state court determinations on state law matters, which includes rulings regarding the admission or exclusion of evidence. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir.1988); accord *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir.2003)("Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." (internal quotation marks omitted)). "The Supreme Court has defined very narrowly the category of infractions that violates fundamental fairness." *Bey v. Bagley*, 500 F.3d 514, 522 (6th Cir.2007) (quoting *Dowling v. United States*, 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990)) (internal quotation marks omitted).

Turning to the merits of Ground Two, the Ninth District provided the following analysis of Petitioner's claim:

{¶ 6} Horne argues that the trial court erred by admitting evidence of his prior criminal conduct. This Court disagrees.

. . .

{¶ 8} Evid.R. 404(B) states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The Ohio Supreme Court has held that "[t]he admission of such evidence lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, at ¶ 66, citing *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, at ¶ 62. This Court has typically applied this standard of review in regard to the admission of other acts evidence, most recently in *State v. Brown*, 9th Dist. No. 25287, 2011-Ohio-1041, at ¶ 19-20; see, also, *State v. Halsell*, 9th Dist. No. 24464, 2009-Ohio-4166, at ¶ 10-19; *State v. Stevenson*, 9th Dist. No. 24408, 2009-Ohio-2455, at ¶ 22-27; but, see, State v. Morris, 9th Dist. No. 09CA0022-M, 2010-Ohio-4282, at ¶ 13 (applying a de novo standard of review). Although this Court has veered in recent weeks from applying the abuse of discretion standard of review, see *State v. Thomas*, 9th Dist.

No. 10CA009756, 2011-Ohio-1629, at ¶ 10, we note that we are duty bound to follow the precedent established by the Ohio Supreme Court, and we do so now. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219. An abuse of discretion demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. *Id.*

{¶ 9} While the exceptions in Evid.R. 404(B) which allow the admission of "other acts" evidence "must be construed against admissibility, and the standard for determining admissibility of such evidence is strict[,]" a reviewing court's "inquiry is confined to determining whether the trial court acted unreasonably, arbitrarily, or unconscionably in deciding the evidentiary issues[.]" (Internal citations and quotations omitted.) *Conway* at ¶ 61-62. Furthermore, this Court has repeatedly stated that "this strict admissibility standard must be considered contemporaneously with the fact that the trial court occupies a superior vantage in determining the admissibility of evidence." (Internal quotations omitted.) *State v. Ristich*, 9th Dist. No. 21701, 2004–Ohio–3086, at ¶ 12, citing *State v. Ali* (Sep. 9, 1998), 9th Dist. No. 18841, citing *State v. Rutledge* (Nov. 19, 1997), 9th Dist. No. 96CA006619.

{¶ 10} Horne argues that the trial court erred by admitting unduly prejudicial testimony regarding his prior conviction for aggravated robbery. The State admitted a certified copy of Horne's prior conviction of aggravated robbery and then elicited testimony about the circumstances of the prior conviction. Horne is not contesting the admission of his prior aggravated robbery. The trial court did not abuse its discretion by admitting testimony regarding the fact of Horne's prior conviction because it was relevant and necessary to proving a necessary element of the charge of having weapons while under disability. See R.C. 2923.13(A)(2) (requiring proof of indictment, conviction, or adjudication as a delinquent child for the commission of an offense that, if committed by an adult, would be a felony offense of violence). Because evidence of the requisite prior conviction is necessary to establish the necessary elements of the charge of having weapons while under a disability, the admission of the certified copy of Horne's prior juvenile adjudication did not constitute error.

{¶ 11} Horne's main contention though is that the trial court erred by admitting testimony regarding the underlying facts and circumstances of his prior conviction. Crim.R. 52(A) provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Horne renewed his objection regarding the admissibility of other acts evidence during Detective John Bell's testimony but not during Detective Richard Morrison's testimony. The evidence to which Horne objected merely provided the factual background to establish how the police developed Horne as a suspect in this case, and did not implicate his character. See *State v. Newcomb* (Nov. 27, 2001), 3d Dist. No. 8-01-07. To the extent that the trial court may have erred in admitting details of the facts underlying his prior conviction for aggravated robbery in violation of Evid.R. 404(B), any error was harmless.

{¶ 12} Detective Bell testified that he investigated an aggravated robbery which occurred in December 2006. He testified that a citizen, Rodney Kelly, gave him information that someone whom he only knew as "Killer" was "possibly involved" in an armed robbery that occurred at Dave's Supermarket, in Akron, approximately one-half mile from Horne's home. Detective Bell testified that he developed Horne as a suspect in the 2006 incident based on Mr. Kelly's report. Detective Richard

-24-

Morrison, who was assigned to investigate the instant aggravated robbery, testified that a citizen, again Rodney Kelly, informed him that he read about the armed theft of a vehicle in the newspaper. Detective Morrison testified that Mr. Kelly reported that he had seen "Killer" driving a car matching the description of the stolen vehicle one day earlier. Detective Morrison testified that Mr. Kelly reported that he was surprised to see "Killer" because he did not believe he had yet been released from youth prison for the 2006 aggravated robbery. Having received information that the same perpetrator was involved in both the 2006 and instant aggravated robberies, Detective Morrison testified that he worked with Detective Bell to develop Horne as a suspect.

{¶ 13} Horne fails to explain how the admission of information regarding the circumstances of the 2006 aggravated robbery affected any substantial right. He does not allege that the outcome of the trial would have been different but for the admission of the challenged evidence. Instead, he alleges that the evidence was not relevant to prove identity, something he claims was not at issue in this case. Horne, however, had filed a notice of alibi. He defended, not on the basis that the victim was not robbed at gunpoint, but rather that he was not the perpetrator because he was at another location at the time of the commission of the offense. Accordingly, identity of the perpetrator was squarely at issue, and the detectives' testimony regarding the 2006 aggravated robbery was relevant to develop the identity of the suspect in the instant case.

{¶ 14} Moreover, Horne does not allege that the admission of the challenged evidence violated any constitutional right. Nevertheless, even where the admission of evidence constitutes constitutional error, the error is harmless "if the remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt." *State v. Williams* (1983), 6 Ohio St.3d 281, at paragraph six of the syllabus. In this case, Detective Morrison testified that he was able to develop Horne as a suspect based on the information Mr. Kelly reported to the police regarding both the 2006 and instant aggravated robberies. Detective Morrison testified that he was, therefore, able to create a photo array including Horne's picture for presentation to the victim. The victim, Douglas Sutton, testified that he identified Horne from the photo array immediately as his attacker. Detective Morrison confirmed the victim's immediate identification of Horne as his attacker. Under the circumstances, the admission of evidence of the facts underlying Horne's prior conviction, if erroneous, constituted harmless error. Horne's first assignment of error is overruled.

The United States Supreme Court in *Dowling* described fundamental fairness as follows:

Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation. We, therefore, have defined the category of infractions that violate 'fundamental fairness' very narrowly. As we observed in [ *United States v.] Lovasco*, [431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977) ]: Judges are not free, in defining 'due process,' to impose on law enforcement officials their personal and private notions of fairness and to disregard the limits that bind judges in their judicial function. They are to determine only whether the action complained of violates those fundamental conceptions of justice which lie at the base of our civil and political institutions, and which define the community's sense of fair play and decency.

Id. at 352-53, 110 S.Ct. 668 (citations, edits, and certain quotation marks omitted). Here, Petitioner

has not shown that the outcome of the trial would have been different but for the admission of the

-25-

prior bad acts evidence.  The remaining evidence, particularly the identification of Petitioner by the victim, was sufficient to sustain his conviction.  Accordingly, the undersigned recommends that the Court find that the first part of Ground Two, predicated upon Petitioner's first assignment of error in state court, has no merit.

Next, Petitioner argues, as he did before the state court in his second assignment of error, that the rule of law announced in *Old Chief v. United States,* 519 U.S. 172, 180-81, 117 S.Ct. 644 (1997), foreclosed the admission of evidence of his prior convictions in the state court case.  In *Old Chief*, the United States Supreme Court opined that " 'the risk that a jury will convict for crimes other than those charged – or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment – creates a prejudicial effect that outweighs ordinary relevance.' " 519 U.S. 172, 181, 117 S.Ct. 644(quoting *United States v. Moccia*, 681 F.2d 61, 63 (1st Cir.1982)).  The Ninth District provided the following analysis of Petitioner's claim:

> {¶ 15} Horne argues that the trial court erred by admitting into evidence a certified copy of a journal entry of his prior convictions in lieu of his stipulation to his prior conviction. This Court disagrees.
>
> {¶ 16} Horne urges us to adopt the holding in *Old Chief v. United States* (1997), 519 U.S. 172, 174, which states that a trial court errs when it admits the full record of conviction in lieu of the criminal defendant's stipulation to the existence of the prior conviction "when the name or nature of the prior offense raises the risk of a verdict tainted by improper considerations, and when the purpose of the evidence is solely to prove the element of prior conviction." This Court has repeatedly rejected the application of the holding in *Old Chief* because that case interpreted a federal statute. See *State v. Peasley*, 9th Dist. No. 25062, 2010-Ohio-4333, at ¶ 12, citing *State v. Williams*, 9th Dist. No. 22877, 2006-Ohio-4720, at ¶ 21; *State v. Kole* (June 28, 2000), 9th Dist. No. 98CA007116, overruled on other grounds by *State v. Kole* (2001), 92 Ohio St.3d 303. Horne has presented no compelling argument to cause this Court to deviate from our prior precedent. Accordingly, the trial court did not err when it admitted into evidence journal entries of Horne's prior conviction. Horne's second assignment of error is overruled.

The Ninth District correctly rejected Petitioner's contention because the United States Supreme Court was interpreting the federal evidentiary rule in *Old Chief*, not the Ohio rule.  The Sixth Circuit, having considered the effect of *Old Chief* during habeas review has found that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir.2003)(citing *Old Chief* and limiting the holding to the interpretation of the Federal

-26-

Rules of Evidence).  Accordingly, the undersigned recommends that the Court find that the second part of Ground Two, predicated upon Petitioner's second assignment of error, has no merit.

Turning to Ground Three, Petitioner contends that trial court committed reversible and plain error when it permitted the admission of testimony about the polygraph results into evidence. There exists an additional  procedural bar to Ground Three.  Ohio employs a contemporaneous-objection rule, under which "an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *Shafer v. Wilson*, No. 07–3284, 364 Fed. Appx. 940, 2010 U.S.App. LEXIS 2452, 2010 WL 395914 at *5 (6th Cir. Feb.4, 2010) unreported, quoting *State v.1981Dodge Ram Van*, 36 Ohio St.3d 168, 522 N.E.2d 524, 526 (Ohio 1988).

In the instant case, the Ninth District noted that Petitioner did not object at trial to the admission of the evidence. Consequently, the Ninth District relied upon the contemporaneous objection rule and conducted a plain error analysis. *Id.* The Sixth Circuit has held that "Ohio's contemporaneous objection rule constitutes an adequate and independent state ground that bars federal habeas review absent a showing of cause and prejudice." *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir.2001). The Court has further held that a state appellate court's review under plain error analysis is not equivalent to a review on the merits. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir.2006).  Because Petitioner has not demonstrated cause and prejudice for trial counsel's failure to object to the admission of the foregoing evidence at trial, the Court should find that Petitioner's third ground for relief is procedurally barred.

With respect to the merits of Ground Three, the Ninth District provided the following analysis of Petitioner's claim predicated upon the admission of testimony regarding the results of the polygraph test:

> {¶ 23} Horne argues that the trial court erred by admitting testimony regarding the results of his polygraph examination because the results were not presented for purposes of corroboration or impeachment. This Court disagrees.

> {¶ 24} Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To constitute plain error, the error "must be obvious and have a substantial adverse

impact on both the integrity of, and the public's confidence in, the judicial proceedings." *State v. Tichon* (1995), 102 Ohio App.3d 758, 767. A reviewing court must take notice of plain error only with the utmost caution, and only then to prevent a manifest miscarriage of justice. *State v. Bray*, 9th Dist. No. 03CA008241, 2004-Ohio-1067, at ¶ 12. This Court may not reverse the judgment of the trial court on the basis of plain error, unless Horne has established that the outcome of the trial clearly would have been different but for the alleged error. *State v. Kobelka* (Nov. 7, 2001), 9th Dist. No. 01CA007808, citing *State v. Waddell* (1996), 75 Ohio St.3d 163, 166.

{¶ 25} The Ohio Supreme Court has long held that, as long as both the State and the defendant have "sign[ed] a written stipulation providing for defendant's submission to the test and for the subsequent admission at trial of the graphs and the examiner's opinion thereon on behalf of either defendant or the state[,]" then the trial court retains broad discretion to admit the results of a polygraph examination for purposes of corroboration or impeachment. *State v. Souel* (1978), 53 Ohio St.2d 123, syllabus; see, also, *State v. Jackson* (1991), 57 Ohio St.3d 29, 37. More recently, the high court has stated:

"We have not adopted the unrestrained use of polygraph results at trial, and polygraphs themselves remain controversial. Only if there is a stipulation between the parties do we allow the admission of polygraph results at trial, and then for corroboration or impeachment only." *In re D. S.*, 111 Ohio St.3d 361, 2006-Ohio-5851, at ¶ 13, citing *Souel*, supra.

{¶ 26} Horne argues, without citation to any authority, that testimony regarding the results of the polygraph examination may be admitted only if it corroborates the defendant's testimony. Specifically, Horne argues that the polygraph examiner's testimony "could not have been offered for the purposes of corroboration or impeachment as Defendant had not taken the stand to testify in his defense." There is no requirement that the results of the polygraph examination be used to corroborate or impeach only the criminal defendant's testimony. The Ohio Supreme Court recognized the admissibility of the results of a polygraph examination where such evidence corroborated the testimony of earlier witnesses for the State and before the defendant testified. *Souel*, 53 Ohio St .2d at 134 (concluding that "the requisite conditions for admissibility of polygraph evidence were met [because] [t]here was substantial evidence tending to indicate that appellant committed the offenses for which he was convicted, and the polygraph evidence was thus merely corroborative."). Accordingly, Horne's argument that evidence of the results of a polygraph examination is only admissible to corroborate the criminal defendant's testimony is not well taken.

{¶ 27} In this case, the victim identified Horne and testified that he pulled a gun on him and took his car as he was attempting to deliver food. Sergeant Ken Butler subsequently testified that he administered a polygraph examination to Horne after Horne and the State agreed to the administration of the examination and jointly stipulated to the admissibility of its results. Sergeant Butler testified that Horne responded "No" to each of the following questions: (1) "Did you rob the Euro Gyro delivery man?" (2) "Did you pull a gun on the Euro Gyro delivery man?" and (3) "Did you steal the Euro Gyro delivery man's car?" The results indicated deception. Accordingly, the testimony regarding the results of the polygraph examination was properly admitted to corroborate the victim's testimony.

{¶ 28} Horne further argues that the trial court erred by admitting into evidence the State's reference to the results of the polygraph examination during opening statements. "It is well settled that statements made by counsel in opening statements and closing arguments are not evidence." State v. Frazier (1995), 73 Ohio St.3d 323,

338; see, also, *U.S. Aviation Underwriters, Inc. v. B.F. Goodrich Co.*, 149 Ohio App.3d 569, 2002-Ohio-5429, at ¶ 28. The trial court expressly instructed the jury to that effect, and the "jury is presumed to follow the instructions of the trial court." *Id.*, citing *State v. Raglin* (1998), 83 Ohio St.3d 253, 264. Accordingly, Horne's argument is this regard is not well taken.

As previously stated, state-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bugh*, 329 F.3d at512. "The Supreme Court has defined very narrowly the category of infractions that violates fundamental fairness." *Bey v. Bagley*, 500 F.3d 514, 522 (6th Cir.2007) (quoting *Dowling v. United States*, 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990)) (internal quotation marks omitted). The undersigned recommends that the Court find that the admission of the testimony regarding the polygraph results does not fall within the very narrowly defined category of infractions that violates fundamental fairness.

Accordingly, the undersigned recommends that the Court find that the assertions in Grounds Two and Three are procedurally barred, or, in the alternative, that they have no merit.

**GROUND FOUR: THE TRIAL COURT ERRED BY WHEN IT REVERSED ITS PRIOR RULING AND PERMITTED THE PROSECUTOR TO REFER TO PETITIONER AS "KILLER."**

Like Grounds Two and Three, Ground Four suffers from two additional procedural defects, that is, the claim is non-cognizable on habeas review because it challenges the admission of evidence, and Petitioner failed to challenge the evidence before the trial court, so the appellate court only undertook plain error review. Petitioner has offered no cause or prejudice to excuse his procedural default. Moreover, a review of the Ninth District's analysis of Petitioner's evidentiary challenge reveals no violation of fundamental fairness:

{¶ 30} Horne argues that the trial court erred by allowing the State to refer to Horne by his alias name "Killer." Specifically, he argues that the nickname was irrelevant and highly prejudicial. This Court disagrees.

{¶ 31} Prior to trial, defense counsel orally moved to prevent the State from referring to Horne by the nickname "Killer." The trial court issued a preliminary ruling, prohibiting the State from referencing the nickname, reasoning that the witnesses could reasonably identify the defendant without reference to his nickname. The trial court revisited the issue after the State informed it that the citizen (Rodney Kelly) who identified "Killer" as the perpetrator was refusing to testify. The trial court questioned Mr. Kelly on the record outside the presence of the jury. Mr. Kelly admitted that he stopped by the detective bureau when he was at the police station on other business and informed a detective that he thought he saw someone driving

a stolen vehicle. He repeatedly asserted, however, that he could not identify the driver. The trial court declared Mr. Kelly as a hostile witness and ordered that the State would be allowed to refer to Horne by his nickname in order to establish how Horne was identified as a suspect in this case. The State began to question Mr. Kelly, referencing the nickname "Killer." Horne did not object. Accordingly, this Court reviews only for plain error.

{¶ 32} This Court has long held that "an appellate court will not consider as error any issue a party was aware of but failed to bring to the trial court's attention[ ]" at a time when the trial court might have corrected the error. State v. Dent, 9th Dist. No. 20907, 2002-Ohio-4522, at ¶ 6. "[F]orfeiture is a failure to preserve an objection[.] * * * [A] mere forfeiture does not extinguish a claim of plain error under Crim.R. 52(B)." (Internal citations omitted.) State v. Payne, 114 Ohio St.3d 502, 2007-Ohio-4642, at ¶ 23.

{¶ 33} As we previously noted, Crim.R. 52(B) states that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court ." To constitute plain error, the error "must be obvious and have a substantial adverse impact on both the integrity of, and the public's confidence in, the judicial proceedings." Tichon, 102 Ohio App.3d at 767. A reviewing court must take notice of plain error only with the utmost caution, and only then to prevent a manifest miscarriage of justice. Bray at ¶ 12. This Court may not reverse the judgment of the trial court on the basis of plain error, unless Horne has established that the outcome of the trial clearly would have been different but for the alleged error. Kobelka, supra, citing Waddell, 75 Ohio St.3d at 166.

{¶ 34} "An appellate court applies an abuse of discretion standard when reviewing a trial court's decision to admit evidence over an objection that it is irrelevant, substantially more prejudicial than probative, or improper other acts evidence." State v. Brown, 9th Dist. No. 25287, 2011-Ohio-1041, at ¶ 20.

{¶ 35} Horne fails to cite to the portions of the record which would support his arguments. He cites merely to several portions of the transcript evidencing the discussion between counsel and the court outside the presence of the jury. As we have stated on many occasions: " 'It is the duty of the appellant, not this court, to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record.' " State v. Ashby, 9th Dist. No. 06CA0077-M, 2007-Ohio-3118, at ¶ 26, quoting State v. Taylor (Feb. 9, 1999), 9th Dist. No. 2783–M; see, also App.R. 16(A)(7). " 'It is not the function of this court to construct a foundation for [an appellant's] claims; failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal.' " Ashby at ¶ 26, quoting Kremer v. Cox (1996), 114 Ohio App.3d 41, 60. App.R. 12(A)(2) allows this Court to disregard any assignment of error in which the appellant "fails to identify in the record the error on which the assignment of error is based[.]"

{¶ 36} In this case, without citing to the relevant portions of the record, Horne argues that the State's reference to the nickname "Killer" was "highly prejudicial and inflammatory" and not relevant to establishing identity.

{¶ 37} Horne argues that allowing the State to use his nickname "Killer" was prejudicial because it might have led the jury to believe that he "acted in conformity with that name." Horne, however, was not charged with a homicide crime. He does not explain how such a nickname might have linked him to the underlying charges. Moreover, he does not argue that, but for the State's reference to the nickname "Killer," the results of the trial would have been different.

-30-

{¶ 38} Horne further argues that the nickname was not relevant to the issue of identity, in particular because identity was not at issue at trial. Horne, however, was defending on the basis of an alibi which he believed established his presence at home, while someone else was committing the aggravated robbery elsewhere. We earlier discussed how Horne's notice of alibi rendered the identity of the perpetrator squarely at issue.

{¶ 39} After asserting that identity was not at issue, Horne immediately conceded that it was and that it could have been proved without reference to the nickname because "there was [a] victim who was willing and able to identify the Defendant." This argument ignores the fact that Horne was only developed as a suspect because a witness who only knew Horne as "Killer" reported his involvement.

{¶ 40} Detective Morrison, without reference to any nickname, testified that Horne was developed as a suspect in this case only because Mr. Kelly reported that he heard his daughter call out by nickname to someone Mr. Kelly knew to have served time for a prior aggravated robbery. According to the detective, Mr. Kelly reported that he only knew Horne by his nickname and he recognized him as the person he saw driving a car which matched the description of a recently recovered stolen vehicle. Prior to being called to the stand to testify, Mr. Kelly became uncooperative and asserted that he had no knowledge of any facts surrounding this case, despite his prior thorough report to police. Detective Morrison testified that it was Mr. Kelly's knowledge of "Killer" which allowed the police to develop Horne as a suspect and which ultimately allowed the victim to identify his assailant. Only after Mr. Kelly refused to cooperate did the trial court allow the State to reference the nickname "Killer" in an effort to corroborate Detective Morrison's testimony regarding the development of this case for prosecution. Significantly, the State never asked Mr. Kelly whether the defendant was the person he knew as "Killer." Instead, the State merely inquired whether Mr. Kelly had reported that his daughter called out to "Killer," that he had seen "Killer" in a blue Dodge Stratus, and that he knew "Killer" had been involved in a prior incident in 2006 at Dave's Supermarket. Under the circumstances, this Court cannot say that the trial court abused its discretion by allowing the State to use the name "Killer" while cross-examining a hostile witness who only knew the defendant by that nickname. In the absence of any error by the trial court, Horne's argument that the court committed plain error must fail. Horne's fifth assignment of error is overruled.

Accordingly, the undersigned recommends that the Court find that Ground Four has been procedurally defaulted, or, in the alternative, that it has no merit.

**GROUND FIVE: PETITIONER'S CONVICTION IS NOT SUPPORTED BY SUFFICIENT EVIDENCE.**

Although Petitioner presented a manifest weight of the evidence challenge in state court, the Ninth District nonetheless undertook a sufficiency of the evidence analysis.  The due process clause of the Fourteenth Amendment requires that a criminal conviction be based upon proof beyond a reasonable doubt as to every fact necessary to constitute the offense charged.  *In re Winship*, 397 U.S. 358, 363-64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).  The standard for determining sufficiency

of the evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In reaching its determination as to the sufficiency of the evidence, a court may not substitute its determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses. See *id.*; see also *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir.1983).

To determine whether the state court unreasonably applied the sufficiency-of-the-evidence standard of *Jackson v. Virginia*, * * * "[f]irst, [the Court] must ask whether the evidence itself was sufficient to convict.... [and] [t]he inquiry ends if [the Court] determines that there was sufficient evidence." *Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir.2010) (citation omitted). Second, "[i]f [the Court] find[s] that the evidence is insufficient to convict, [the Court] must then apply AEDPA deference and ask whether the state court was 'objectively unreasonable' in concluding that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt." *Id.* (citation omitted).

The result of this double deference is that "habeas corpus relief is appropriate based on insufficient evidence only where we find, after viewing the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir.2007). On habeas review, federal courts must assume that the jury "resolve[d] conflicts in the testimony," "weigh[ed] the evidence," and drew "reasonable inferences" therefrom. *Jackson*, supra, at 319. A court should interfere with a jury verdict only to the extent necessary to guarantee the fundamental protections of due process of law.

The Ninth District provided the following analysis of the sufficiency of the evidence adduced at trial:

> {¶ 43} A review of the sufficiency of the State's evidence and the manifest weight of the evidence adduced at trial are separate and legally distinct determinations. *State v. Gulley* (Mar. 15, 2000), 9th Dist. No. 19600. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." *Id*., citing *State v. Thompkins* (1997), 78 Ohio St.3d 380, 390 (Cook J., concurring). When reviewing the sufficiency of the evidence, this Court must review

-32-

the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *Jenks*, 61 Ohio St.3d at 279.

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* at paragraph two of the syllabus.

. . .

{¶ 45} Horne was charged with aggravated robbery in violation of R.C. 2911.01(A)(1), which states that "[n]o person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]" Grand theft in violation of R.C. 2913.02 constitutes a "theft offense." R.C. 2913.01(K)(1). The alleged deadly weapon in this case was a firearm.

{¶ 46} Horne was charged with a firearm specification in conjunction with the charge of aggravated robbery. R.C. 2941.145 requires proof beyond a reasonable doubt that "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." A "firearm" is "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." R.C. 2923.11(B)(1).

{¶ 47} Horne was charged with having weapons while under disability in violation of R.C. 2923.13(A)(2), which states: "Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence[.]" Both kidnapping and aggravated robbery are offenses of violence. R.C. 2901.01(A)(9). R .C. 2901.22(B) states that "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

{¶ 48} Horne was charged with grand theft in violation of R .C. 2913.02(A)(1)/(4) which states that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent[, or] [b]y threat." In addition, R.C. 2913.02(B)(5) states that "[i]f the property stolen is a motor vehicle, a violation of this section is grand theft of a motor vehicle[.]" Pursuant to R.C. 2901.22(A): "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to

-33-

accomplish thereby, it is his specific intention to engage in conduct of that nature." "Deprive" is defined, in part, as "[d]ispos[ing] of property so as to make it unlikely that the owner will recover it[, or] [a]ccept[ing], us[ing], or appropriate[ing] money, property, or services, with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration." R.C. 2913.01(C)(2)-(3).

The Ninth District then set forth the recitation of facts provided at pages two through six of this report and recommendation, and concluded that there was sufficient evidence offered at trial to support Petitioner's convictions.  Petitioner contends that the state failed to prove that he possessed or brandished the deadly weapon, despite the fact that the witness identified Petitioner as that man who brandished the gun. Petitioner argues that the witness's memory of the events was "highly questionable." ECF Dkt. #1-1 at p. 30.  Petitioner's argument is predicated upon the witness's credibility.  However, credibility is a manifest weight of the evidence challenge. To the extent Petitioner claims his verdict was against the manifest weight of the evidence, that claim is non-cognizable in habeas proceedings and must be dismissed. *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990); *Morris v. Hudson*, 2007 WL 4276665, at *2 (N.D.Ohio 2007).  Accordingly, the undersigned recommends that the Court find that Ground Five has no merit.

## VII.  **CONCLUSION**

For the foregoing reasons, the undersigned recommends that the Court DISMISS the instant petition in its entirety with prejudice.  Furthermore, Petitioner, in the final sentence of his petition, requests an evidentiary hearing. Petitioner's request for an evidentiary hearing should be DENIED as moot.


DATE: November 14, 2014          */s/ George J. Limbert*
                                 GEORGE J. LIMBERT
                                 UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).